We're going to hear next, number 18-1394, Guarantee Company of North America v. Ikhana. Council, for the Guarantee case, please come up. Yes, sir. Yes, sir. Okay, Mr. Pike. May it please the Court, Your Honors, my name is Patrick Pike. I'm the attorney for the Guarantee Company of North America USA. This case is about assurity. In the Blue Brief at 16, you rely on Bell BCI v. Old Dominion demolition. Yes, Your Honor. Does that have anything to do with the Contract Disputes Act? No. Okay. This is a hard row, from my view, this is a hard row for you to hoe because of the CDA. In the normal course, sure, sureties do what you wanted to do all the time. But how is GCNA a contractor to the government pursuant to 7107-7 of the CDA? Yes, Your Honor. The government contract in this case is the settlement agreement between the government and GCNA. That settlement agreement was negotiated between the government and the surety, and both parties came to the resolution that the government would accept and wanted a tender of a contractor to the government to perform construction services and to finish a defaulted project. Okay, but that may help you on the Anti-Assignment Act, but why does it help you under the CDA? And in particular, how does it really distinguish the fireman's case? I mean, I think these cases like fireman's that have construed the CDA as restrictively as they have may be open to question, but there it is, and we're bound by it. So how can we distinguish fireman's because you have a settlement agreement as opposed to an assignment? Well, the answer, Your Honor, I think is this. Fireman's and the cases cited in the briefs are takeover cases where the surety entered into a contract with the government like we did to perform under a performance bond like the guarantee company did. And in order to do that, the sureties went out and located a contractor like guarantee company did and presented that contractor to the government for the government's approval like the guarantee company did, then agreed to finance completion of the work like the guarantee company did. Yeah, but I don't understand that those cases might help you if the claims here related to the post-takeover performance, but they don't. Aren't I correct about that? Well, I don't think so, Your Honor, for this reason. You're right about what they relate to, but the pre-takeover claims cases deal with the situation where the government raises the anti-assignment acts as a defense saying that the pre-takeover claims occurred when there was no contract between the defaulted contractor and the government. The government waived that here just like it did in the Maharaj case. Waive the anti-assignment act? Well, fine. We're not talking about the anti-assignment act. We're talking about the cases like Fireman's and others that have construed the Contract Disputes Act as limited to contractors and excluding sureties that take by assignment. Indeed, they appear to exclude sureties who are subrogated. Subrogation is not this case, right? I agree. It's not subrogation, but let's analyze those takeover cases. The takeover cases where the government agreed to hear the pre-takeover cases, the contractor's cases, and the takeover cases where the government waived the anti-assignment act and agreed to that, those cases were before the board. It's the same thing here. We've got a contract where the government and the surety agreed. Which case says that pre-takeover claims can be brought before the board? The Maharaj case, which is the Department of Labor Contract Appeals Board, and also the Safeco case, Your Honor. In that case, the government actually objected to the surety bringing pre-takeover claims. And that's the standard situation where the government wants the anti-assignment act as a defense. The government objected in that case to the board hearing pre-takeover claims. The board analyzed the totality of the facts and the circumstances and determined that there was a waiver of the anti-assignment act. Well, that's not what we're talking about. Where did Muramani suggest that the CDA was applicable to a pre-takeover claim? Well, the best answer I can give you, Your Honor, is it's not. If it's not, it's because of the anti-assignment act. No, no. Fireman said it's because of the CDA. But in the fireman's case, the government raised the anti-assignment act. What do you have that analyzes the CDA in your favor in these circumstances? The CDA itself, Your Honor. We're a government contractor. The surety entered into a contract with the government. But you're not suing on that contract. You're trying to intervene in the original contractor's suit against the government. If you were trying to sue over the agreement you entered into with the government, you would be a government contractor for purposes of the CDA. But you're not doing that. You're trying to sue on a different contract for pre-takeover conduct. And fireman's fund seems to prohibit that. Your Honor, here's what we're suing on. Under the indemnity agreement, which is universal, every Miller Act surety has indemnity agreements. I have to tell you, I think you have a heck of a policy argument because of the Miller Act. In effect, what fireman's fund says is that the only way that insurance companies should issue a Miller Act bond is if they get all the cash up front from the contractor. Because they have no standard remedies if fireman's fund is correct. But it's still, I think it's still finding authority on this. Well, I guess we have a difference of opinion. Can I ask you this? Why isn't the government here? The government got a flat tire on the way in. But if the answer is why didn't they appeal? No, I wasn't joking. That was a serious question. No, no, I didn't mean to be flip. The government agreed to your motion to intervene, I think below, authorize the settlement agreement. I want to know how they think that was consistent with fireman's fund. Do they know about this case? Oh, they know all about it, Your Honor. The reason they didn't appeal is they lost on a motion for summary judgment, which didn't meet the finality requirements. Sure, but you had a, not final, but the collateral order thing. They could have moved to intervene on appeal. They didn't. They chose not to. And I can't tell you why. Perhaps because they took a second look and once it got to the Justice Department and decided it wasn't consistent with fireman's fund. Your Honor, I think it is, respectfully, I think it's consistent. These cases, these pre-takeover claim cases, the reason they're barred is because the government raised the anti-assignment act. There's a takeover agreement, so that's the pendant contract, the takeover agreement between the government and the surety. Then the question is, how does the surety get to the pre-takeover claims? The answer is, the government waives the anti-assignment act, so the surety comes in. But it still doesn't solve the CDA problem, which is what fireman's and other cases are about. As Judge Wallach and I have been suggesting, those cases may not make a lot of sense in terms of policy, but there they are, and we're stuck with them. Let me try this approach, Your Honor. We've got the takeover agreement. The case we're bringing before the appeals court is Icona's case. It's assigned to the surety, the surety is the attorney in fact. The case we're bringing is Icona's case, so it's the same claim Icona had. It's not a different claim, it's exactly the same claim. And the ASPCA basically recognized that. And what it based its opinion on, it's a very narrow opinion, the Burnside Ott case, which we contend doesn't have anything to do with this. Well, sure, I don't find the board judge's reasoning very persuasive, but he didn't look at fireman's. But I'm still confused as to why you're here and not the government. It may be that if the government had entered into a takeover agreement with you, and you had waived all those claims, that that would be a defense to the contractors to Icona's case at the board. But why aren't they the ones asserting it, not you? Well, I can tell you what Michael Shields, who is the court's attorney, told me. He told me they sent it to the Justice Department, and the Justice Department didn't determine that it was a final opinion. And I raised with Mr. Shields the collateral order rule, the relaxed finality requirements for this court. And my understanding is he couldn't convince the Justice Department to go along with that. That's my understanding. So if we disagree with you and dismiss your appeal and say you can't intervene, the government still has the agreement with you as a defense to Icona's default action, right? The agreement is still in place, but a material term of it wasn't performed, the dismissal of this appeal. That's a material term of the settlement agreement. The surety paid $1.4 million. In return, the government released the surety, released Icona as well. And part of the settlement was that we would see to the dismissal of the case based on the indemnity agreement, the assignment provisions, and the power of attorney, which were specifically negotiated with the government. And if the court looks at Robert Wood's declaration, the contracting officer, and the government's brief, it's clear that the government knew all about this before he. That was the essential. What you did is what's normally done in the bonding industry. Correct. Well, the other thing here to keep in mind, I think what this surety did was exempt me. We've got a project here. It's security at the Pentagon, okay? It was falling behind. The government's got a bond. It wants to finish this job. If the surety walked away and said, we're going to let the thing go through the whole dispute of appeals and appeals to the appeals, meanwhile, we've got this security project at the Pentagon. I'll tell you this. If we're bound by firearms, I think you ought to seek in bank. That's my opinion. You want to sit down on that now? Yeah, I think I'll foot while I'm ahead. Your Honor, I didn't mean to be flippant. The man called me and said he was coming, but he had a flat tire. I thought that's what you were asking. Honestly. Oh, you mean whether there's somebody here or not? Yes, I thought you were asking. Michael Shields. Okay, I get it. Mr. Scott. May it please the court. So this Burnside Ott theory is just wrong, right? I was surprised to see that. I did not argue it. I don't think, candidly, that the agreement between the GIA would violate Burnside Ott. The settlement agreement might, but I think Burnside Ott, I was surprised that when there were so many easier ways to go and expose this case under the CDA. Fireman's fund, this contract. You're not contending that the Anti-Assignment Act is a bar here, right? No, I think it is, but I don't think I need to go there. Why would it be a bar given the agreement to the government's apparent waiver of the Anti-Assignment Act? The fireman's fund said that the general indemnity agreement could not be, when used by the government, could not be used because of the Anti-Assignment Act. You could not assign the contract, I mean the claims. They're doing the same thing now in a slightly different way. But the government can waive that. The government has the authority to assert an Anti-Assignment Act problem, but they can waive it. So they can allow assignment of claims to a surety. Absolutely, but they took none of the steps that were required here to waive that. For example, Your view is the settlement agreement between the surety and the government is insufficient under the Anti-Assignment Act to constitute waiver. Assuming it was, that the government did take the proper steps, and this settlement agreement is a takeover agreement and qualifies under the Anti-Assignment Act, then the government can waive those problems and the claims would be the sureties, right? Yes, but they could never, under the Contract Disputes Act, That's the issue, it's a different issue. They can't ever get to the board or have any standings in the board because that's settlement agreement. Sure, they can't. They can't. But if the government had done a proper takeover agreement, waived all the claims, and the claims became the sureties, and then the surety and the government entered into a settlement agreement getting rid of everything, then the government might be able to use that as a defense against you. The surety still has no place in the board, actually. I think you're correct. Unless the government somehow breaches its contract with the surety. That's correct. And I think what will happen, first of all, I do want to answer. So you anticipate, even if they lose getting a defense from the government, that your claims are barred by the settlement agreement. Oh, there's an odd circumstance, because not only did GC&A say that they were going to cause these claims to be dismissed, but if the government's required to pay any money, then GC&A indemnifies the government. So no matter what, I think this is going back to the district court in Virginia to determine what happens next under the Bell case. That's tentatively what I think is going to happen with this case. Because if ICANA loses, it's over. I mean, it's over. Nothing happens. They can come after GC&A. I mean, GC&A can come after ICANA under the indemnity agreement. If they win and money is determined to be owed, then that's where it really gets interesting. Is that settlement agreement a bar, or do we have to go back to the district court in Virginia to determine what then the indemnity agreement really says, and was there bad faith in all these other issues that are raised in that court? Okay, but that's for some other proceeding. Your Honor. But tell me, is the Anti-Assignment Act a problem here, or has it been waived by the government? Based on the facts as presented and what has happened, it has not been waived by the government. The Anti-Assignment Act was not even addressed. I mean, the assignment and the claims was not addressed in the settlement agreement. There's nothing in the record that suggests they even knew about the general indemnity agreement or anything else. None of the requirements for waiver have been met. So the Anti-Assignment Act is applicable in that they haven't waived it. Okay. To answer one of the questions that the court asked earlier, Mr. Pike has argued that the settlement agreement itself is a contract under the CDA, and it is not. Under 41 U.S.C. 7102. It's not within the categories of contracts. I'm sorry? It's not within the categories. It's not within the categories. It's not a contract. What about the contract? It's just not a CDA contract. It's not a CDA contract, so therefore they're not a contractor under the CDA. The board never had jurisdiction and can never have jurisdiction. But that's only if we view it as not a takeover agreement under the Anti-Assignment Act. If we view it as sufficient under the Anti-Assignment Act as a takeover agreement, then it is a CDA contract. It turns them into a contractor. Only under a fireman's fund and all the other cases, only for post. Post importation. Post. And then there's not even a claim on that contract yet. You'd have to take a couple of steps. We understand. These are pre-takeover claims. Yes, these are pre-takeover claims. What about the policy question I raised about the discouragement of bonding companies from issuing Miller Act bonds? I think the bigger issue is for contractors that would be willing to enter into a general indemnification agreement that required them to give up their rights to be able to pursue the government for wrongful action so they could identify the surety. That's where I think the issue comes in as a policy issue. There's no question it cuts both ways. It cuts both ways. The problem I have is with the law as it's interpreted right now under the CDA. Or under Bell, I think that it puts contractors that have agreed to a personal indemnification under a tremendous burden. That if they can go under and settle all these cases, absent of showing bad faith, which is very difficult, but I think there's an argument there. And that's an interesting question later on. That goes back to the district court. But you can't get there in the board, which is really, I think, the issue here. Can you get to any of these issues in the board? And the answer is no. Is there anything in the history of the CDA that suggests it was intended to bar sureties from suing when they have an assignment from the contractor? I think Farman's Fund, all the cases. I'm talking about the legislative history of the CDA. Your Honor, if I told you I hadn't gone back and looked at that, I cannot answer that question in good conscience and tell you I've gone back and looked at that. The CDA is, I think this is where Burnside does come into play, that it is the exclusive remedy for a contractor. And contractors rely on that in order to be able to obtain a bond and feel secure that they can provide the indemnification. Okay, anything further? Your Honor, I think that's really it. Thank you very much. Okay, thank you. Mr. Pike, you have a couple minutes here. Your Honors, we have a government contract, that's clear. The question is, does it come within the Contract Disputes Act? The types of contracts that are recognized... Even if your contract with the government comes within the Contract Disputes Act, that's not the contract that was before the board. The contractor sued on its contract. And so the question is, are you allowed to intervene and get rid of their claims under that separate contract? Yes. We intervene as the assignee and as the attorney-in-fact. Now, Mr. Scott indicated that no contractor would sign an indemnity agreement. I kind of could have avoided all of this. We made a collateral demand. If they would have met the collateral demand, they could have gone forward. They breached on the collateral demand. The collateral demand in the court recognizes, the board recognizes, and so did the Eastern District of Virginia. That activated the assignment clause. That activated the attorney-in-fact clause. When we go in to intervene, we are intervening as ICANA, as their attorney-in-fact, through the assignment and attorney-in-fact clauses. Those facts aren't in dispute. I think they are. I think your friend on the other side just got up and said that the government didn't follow the sufficient procedures to get the follow-through agreement and to waive the Anti-Assignment Act defenses. I mean, settling an agreement with the surety may or may not waive the Anti-Assignment Act. We don't have enough. That issue is not really before us. The Anti-Assignment Issue?  I mean, I don't think it matters one way or another. Has the government taken a position on the Anti-Assignment Act? Oh, yes, Your Honor. Well, their position is that they waived it. And if one looks at Contracting Officer Wood's declaration, which is attached to the government's motion for summary judgment, the government goes on and on for six, eight pages about the assignment, the negotiations. They recognize the assignment to the surety. They recognize that the surety was now the assignee and attorney-in-fact. This has clearly been waived. There's no question about that. Well, I mean, there are procedures to follow under the Anti-Assignment Act. So is it clear that they followed the proper procedures? I can't tell you that, Your Honor. I can tell you there's nothing in the legislative history that deals with this situation or would bar a surety from doing exactly what this surety did here. I've researched that pretty thoroughly. Okay. Thank you, Mr. Pike. Thank you, Your Honor. The case is submitted.